IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-02094-MSK-CBS

RE/MAX, LLC, *a Delaware limited liability company*,

        Plaintiff,

v.

QUALITY LIVING, LLC, *a Colorado limited liability company*,
RANDY W. GRINDLE, *an individual*,

        Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

Magistrate Judge Shaffer

       This civil action comes before the court on Plaintiff RE/MAX, LLC's ("RE/MAX") Motion for Default Judgment (Doc. 20) dated November 6, 2014. Neither Defendant has filed a response to the present motion. The Motion was referred to the Magistrate Judge by Order of Reference (Doc. 22) dated November 7, 2014. The court has reviewed the Motion, the exhibits and affidavits, the entire case file, the arguments presented at the April 20, 2015 hearing (*see* Doc. 26), and the applicable law and is sufficiently advised in the premises.

## STATEMENT OF THE CASE

       RE/MAX is a well-known real estate brokerage franchise system that operates nationally. RE/MAX owns various trademarks, service marks, designs, and color patterns, which are registered with the United States Patent and Trademark Office. RE/MAX has the exclusive rights to these incontestable trademarks, and licenses them to members of its franchise system.

In 2007, RE/MAX entered into a franchise agreement with Defendant Randy W. Grindle to operate RE/MAX Quality Living in Wiggins, Colorado. The franchise agreement was renewed in 2012 for a period of five years. Under the agreement, Defendants were permitted to use the RE/MAX Marks in connection with their real estate brokerage business. In exchange, Defendants agreed to perform certain obligations including paying annual dues, fees, and a percentage of annual commissions. The franchise agreement also provided for immediate termination if the franchisee failed to actively operate a formal RE/MAX office for a period of five consecutive days.

According to the allegations in the complaint, in March 2014, RE/MAX was advised that Defendants' office was no longer open and operating as a RE/MAX franchise. RE/MAX sent a letter to Defendants terminating the franchise agreement and advising Defendants of their obligation to stop using any of the RE/MAX Marks. Since the termination, however, Defendants have continued to use RE/MAX's Marks, including signs on the former office location, as well as "For Sale" yard signs identifying Defendants' brokerage as part of the RE/MAX network.

RE/MAX filed its complaint against Defendant Grindle and Defendant Quality Living, LLC on July 28, 2014, alleging claims of trademark counterfeiting, infringement, and unfair competition, as well as a breach of contract claim. RE/MAX seeks damages and permanent injunctive relief. Both Defendants were served on August 28, 2014; neither Defendant has answered nor has either ever appeared in this matter. Thereafter, RE/MAX moved for Default, which was entered by the Clerk of Court on October 24, 2014. (Doc. 18). RE/MAX now moves for default judgment pursuant to Rule 55(b).

**STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 55(b), default judgment may enter against a party who fails to appear or otherwise defend a case brought against him or her. However, a party is not entitled to the entry of default judgment as a matter of right. *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-02445-LTB-MJW, 2008 WL 793606, at * 2 (D. Colo. Mar. 22, 2008) (quoting *Cablevision of S. Conn. Ltd. P'ship v. Smith*, 141 F.Supp.2d 277, 281 (D. Conn. 2001)). Even after the entry of default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment." *McCabe v. Campos*, No. 05-cv-00846-RPM-BNB, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)). "In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true." *Id*. The decision whether to enter judgment by default is committed to the sound discretion of the district court. *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003).

**DISCUSSION**

**A.     Subject Matter Jurisdiction, Personal Jurisdiction & Venue**

In determining whether the entry of default judgment is warranted, the court must first determine whether it has jurisdiction over the subject matter and the defendants. *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v, Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986). It is well-settled law that "[a] judgment is void when a court enters it lacking subject matter jurisdiction or jurisdiction over the parties." *Id*. at 1202.

Here, the allegations in the complaint — taken to be true for purposes of default judgment — establish the court's jurisdiction over this lawsuit and the parties. This case arises

3

under the federal trademark statute — the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* — and the court, therefore, has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. §§ 1338(a) and (b). The court has supplemental jurisdiction over RE/MAX's state law breach of contract claim. *See* 28 U.S.C. § 1367(a).

In addition, according to the well-plead allegations in the complaint, Defendant Quality Living, LLC is a Colorado limited liability company with its principal place of business in Colorado. (Doc. 2 at ¶ 3). Defendant Randy W. Grindle is the registered agent of Quality Living, LLC, and allegedly has a home in Wiggins, Colorado. *Id.* at ¶ 4.  And the record shows that service on the Defendants was valid and effective (by personal in-hand service on Defendant. Grindle). (Docs. 11 & 12). Consequently, the court has personal jurisdiction over the Defendants.[1]

Finally, because Quality Living, LLC is organized under the laws of Colorado, Defendant Grindle is a resident of Colorado, and the alleged wrongful conduct occurred in the state of Colorado, the court finds that venue is proper in the State and District of Colorado under 28 U.S.C. § 1391.

**B.      Liability**

RE/MAX seeks default judgment against Defendants on its trademark claims as well as its claim for breach of contract. By failing to answer the complaint, Defendants have relieved RE/MAX of the burden of proving its factual allegations supporting these claims. *United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006).  Nevertheless, "the Court must determine whether the allegations contained in Plaintiff's Complaint are sufficient to state a claim for relief." *Jones v. Wells Fargo Bank, N.A.*, No 13-cv-02210-MSK-KLM, 2014 WL 3906297, at *8

---

[1] In addition, the Defendants are not minors, incompetents, or in the military service. (Doc. 21 at ¶¶ 5-6).

(D. Colo. Aug. 7, 2014) (internal quotation marks and citations omitted). "To state a claim for relief, the Complaint must contain sufficient factual matter, accepted as true to show that the claim is plausible on its face." *Id*. (citations omitted). "A claim is facially plausible when the plaintiff pleads facts that allow the court to reasonably infer that the defendant is liable for the alleged conduct." *Id*.

### 1. Trademark Infringement and Unfair Competition

RE/MAX has asserted claims under the Lanham Act for trademark infringement and unfair competition as well as common law claims of infringement and unfair competition. Under federal law, the central inquiry on trademark infringement and unfair competition claims is the likelihood of consumer confusion.[2] 15 U.S.C. §§ 1114(1), 1125(a), *see Beltronics USA, Inc. v. Midwest Inv. Distrib., LLC*, 562 F.3d 1067, 1071 (10th Cir. 2009); *Winmark Corp. v. Schneeberger*, No. 13-cv-0274-WJM-BNB, 2013 WL 1154506, at *5 (D. Colo. Mar. 19, 2013). "It is well settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes trademark infringement." *Winmark*, 2013 WL 1154506, at *5 (citing *Big O Tires, LLC v. JDV, LLC*, No. 08-cv-1046-WYD, 2008 WL 4787619 at *3 (D. Colo. Oct. 21, 2008)). Further, "[i]n cases involving terminated franchisees, the potential for customer confusion is even greater than in cases of random infringement." *Id*. (quoting *Paisa, Inc. v. N & G Auto, Inc.*, 928 F.Supp. 1004, 1008 (C.D.Cal. 1996)); *see also* Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:31 (4th ed. 2013)

---

[2] The elements of infringement and unfair competition claims are virtually identical. Plaintiff must demonstrate that (1) it possesses a protectable trademark; (2) the defendant used a mark in commerce in conjunction with goods or services; and (3) the defendant's use of the mark "is likely to cause confusion . . . as to the origin, sponsorship, or approval of [the] goods, services, or commercial activities by another person." *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1050 (10th Cir. 2008).

("A licensee who once had authorization becomes associated in the public mind with the licensor or franchisor.").

Here, the allegations in the complaint establish that RE/MAX is the owner of several registered United States trademarks and service marks in connection with its real estate brokerage services. (Doc. 1 at ¶¶ 11, 13, 15, 16). Its Marks include, but are not limited to, the U.S. Service Mark of the RE/MAX hot air balloon, U.S. Trademark Registration No. 1,173,586, and the U.S. Service Mark comprised of a rectangular sign with three horizontal bars — red at the top, white in the middle, and blue at the bottom, U.S. Trademark No. 1,702,048. Each of RE/MAX's marks is incontestable pursuant to 15 U.S.C. § 1065. *Id*. at ¶ 17. The complaint further establishes that Defendant Grindle was a franchisee, whose right to use RE/MAX's Marks ceased upon the proper termination of the franchise agreement. *Id*. at ¶¶ 36-41. Nonetheless, Defendant Grindle and Defendant Quality Living failed to take the necessary post-termination de-identification steps to distinguish their real estate business from RE/MAX's, as required by the franchise agreement. *Id*. at ¶¶ 33, 38-39. Indeed, Defendants have continued to use RE/MAX's Marks in connection with their real estate business. *Id*. at ¶¶ 38-39, 43-45. Because Defendants engaged in unauthorized use of RE/MAX's Marks following the termination of the franchise agreement, the court finds that there is a likelihood of consumer confusion. *Winmark*, 2013 WL 1154506, at *5. Therefore, the court concludes that these facts suffice to state a claim for trademark infringement and unfair competition. *Utah Lighthouse Ministry*, 527 F.3d at 1050 (setting out the elements of infringement and unfair competition claims).

2. Trademark Counterfeiting

RE/MAX also asserts that because Defendants have been using its Marks without authorization, Defendants' infringement constitutes counterfeiting as defined in 15 U.S.C. § 1116(d)(1)(B). RE/MAX further argues that because Defendants' conduct was intentional, it is entitled to mandatory treble damages under 15 U.S.C. § 1117(b).

Section 1114 of the Lanham Act — establishing a trademark counterfeiting cause of action — prohibits the use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale . . . of any goods or services . . . [where] such use is likely to cause confusion . . . or to deceive." 15 U.S.C. § 1114(1)(a). Here, according to the allegations in the complaint, the Marks used by Defendants are not "counterfeit" in the literal sense; Defendants have not reproduced RE/MAX's Marks. Rather, Defendants have continued to use original marks without authorization. The question, therefore, is whether a hold-over franchisee engages in trademark counterfeiting if it continues to use the franchisor's original mark despite the termination of its license.

The court is unaware of any Tenth Circuit precedent expressly considering this issue. And there is a split in authority regarding whether Defendants' use of RE/MAX's Marks constitutes counterfeiting, and thus allows treble damages. However, following a review of the authority from other courts — and in light of the reasonable meaning of the statute and Tenth Circuit precedent regarding trademark infringement — the court concludes that the continued use of a formerly authorized mark by a hold-over franchisee constitutes the use of a "counterfeit" trademark.

In *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185 (6th Cir. 1997), the Sixth Circuit expressly held that a franchisee's holdover use of a trademark is not counterfeiting.

There, the plaintiff sued a former franchisee for continuing to use its trademarks. The district court granted summary judgment in favor of the plaintiff, and agreed that the misuse of the plaintiff's marks constituted counterfeiting. The Sixth Circuit, however, reversed, holding that "[a]lthough the [defendant's] use of an original trademark is without authorization, it is not the use of a counterfeit mark." *Id*. at 1192. But the court's holding offered no explanation as to why the defendant had not committed counterfeiting by attaching plaintiff's trademark to unauthorized goods and services. *Id*.

The Ninth Circuit, however, reached the opposite conclusion in *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708 (9th Cir. 2005). There, a state agency sued a former licensee of several certification marks — which differ in certain respects from ordinary trademarks. The plaintiff asserted that the defendant had violated the Lanham Act by purchasing bags with the plaintiff's certification marks and using them to package potatoes, despite the fact that the defendant's license to use the marks had expired. The Ninth Circuit agreed that the defendant's conduct constituted counterfeiting. Because the defendant admitted that it was using the plaintiff's registered mark without a license, the court concluded that whether the defendant's conduct constituted counterfeiting turned on whether its behavior was likely to cause confusion. *Id*. at 721. The court reasoned that an ex-licensee's use of a certification mark implies that the goods or services meet certain standards, which is likely to cause consumer confusion. *Id*.[3] *See also Century 21 Real Estate, LLC v. Destiny Real Estate Properties*, No. 4:11-CV-38 JD, 2011 WL 6736060 (N.D. Ind. Dec. 19, 2011) (holding that a former franchisee's continued use of Century 21's trademarks in reference to services that had no connection with, or approval from, Century 21, constituted the use of a counterfeit mark).

---

[3] The Ninth Circuit cited the Sixth Circuit's decision in *U.S. Structures*, but did not discuss the case.

In addition, other circuits have employed logic similar to the Ninth Circuit in concluding that the unauthorized use of an original trademark can qualify as counterfeiting. For example, in *General Electric Company v. Speicher*, 877 F.2d 531 (7th Cir. 1989), the Seventh Circuit — while not expressly dealing with a hold-over franchisee's continued use of a trademark — held that the act of placing non-General Electric products in boxes that General Electric had stamped with its registered "GE" trademark qualified as "reproduction, counterfeit, copy, or colorable imitation" of the mark. Judge Posner explained:

> We can see no difference, so far as the objectives of section 1114(a)(a) are concerned, between [the unauthorized use of GE's original trademark] and making a reproduction of GE's trademark. The happenstance of having trademarks made by the owner in one's possession, so that one doesn't have to copy them, has no relevance to the purpose of the statute. Indeed, the danger of confusion is even greater because the "imitation" is not merely colorable, but perfect. The more fundamental point is that *the purpose of trademark law is not to guarantee genuine trademarks but to guarantee that every item sold under a trademark is the genuine trademarked product, and not a substitute*.

*Id*. at 534 (emphasis added). *See Westinghouse Elec. Corp. v. General Circuit Breakers & Elec. Supply Inc.*, 106 F.3d 894, 899 (9th Cir. 1997) (noting that duplication of the mark is not relevant to a trademark counterfeiting claim); *El Greco Leather Products Co., Inc. v. Shoe World, Inc.*, 806 F.2d 392, 396 (2d Cir. 1986) (holding shoe manufacturer liable for selling shoes bearing the genuine Candie's trademark after its contract with Candie's had been cancelled); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983) (holding franchisee liable for displaying the original Burger King marks after its right to do so had been revoked). *See also Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F.Supp. 131, 135 (D. Colo. 1980) (holding the defendant liable under section 1114 for transporting and selling Coors beer in the original trademarked packages without maintaining the quality standards of Coors).

The logic of these holdings is consistent with the Tenth Circuit's consistent recognition that the purpose of trademark law is "to guarantee that every item sold under a trademark is the genuine product, and not a substitute." *United States v. Giles*, 213 F.3d 1247, 1252 (10th Cir. 2000); *see also Drexel Enterprises, Inc. v. Richardson*, 312 F.2d 525, 527 (10th Cir. 1962) (the function of a trademark is "to designate, identify, and point out distinctively the origin of the products to which it is attached"). Thus, the court concludes that the Ninth Circuit's holding in *State of Idaho Potato Comm'n* — as opposed to the Sixth Circuit's holding in *U.S. Structures* — is better reasoned. This court "can conceive of no reason why an ex-franchisee should escape liability for counterfeiting simply because that person had access to the franchisor's original marks because of the former relationship and therefore did not need to reproduce an identical or substantially similar mark." *Century 21 Real Estate, LLC*, 2011 WL 6736060, at *5.

Here, the Defendants wrapped their real estate services in a "package" marked with RE/MAX's trademarks. A consumer aware of RE/MAX's brand would associate Defendants' services with that brand and may never know that Defendants' services were unauthorized by RE/MAX. Consequently, the court holds that Defendants' unlicensed use of RE/MAX's marks constitutes trademark counterfeiting and thus entitles RE/MAX to treble damages under §1117(b).

3. <u>Breach of Contract</u>

In addition to the intellectual property claims, RE/MAX has asserted a claim for breach of contract against Defendant Grindle. (Doc. 1 at ¶¶ 84-91). Under Colorado law, a plaintiff asserting a breach of contract claim must prove (1) the existence of a contract; (2) performance by the plaintiff; (3) failure to perform the contract by the defendant; and (4) damages to the

plaintiff. *W. Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992); *see also Williams v. Owners Ins. Co.*, ___ F. App'x___, ___, 2015 WL 4257656, at * 2 (10th Cir. 2015).

Taking the allegations in the complaint as true, the court concludes that RE/MAX has alleged sufficient facts to establish a breach of contract. The complaint alleges that a contract existed between the parties in the form of a franchise agreement. (*See* Doc. 1 at ¶¶ 23-35). It further alleges that RE/MAX has performed all conditions, covenants, and promises required on its part under the terms of the franchise agreement. *Id.* at ¶ 86. RE/MAX maintains that Defendant Grindle failed to (1) pay the required broker fee, *id.* at ¶¶ 28, 87; (2) maintain a physical office space, *id.* at ¶¶ 31, 87; and (3) fulfill its de-identification obligations, *id.* at ¶¶ 33, 87. And Defendant Grindle's breach resulted in damages — unpaid fees and commissions, late fees, liquidated damages, and interest — which RE/MAX seeks to cover. *Id.* at ¶ 88. Thus, RE/MAX is also entitled to default judgment on its contract claim.

## C.     Damages

Default judgment cannot enter under Rule 55(b)(2) until the amount of damages has been ascertained. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). A default judgment for money damages must be supported by proof. *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949). This ensures that the plaintiff is not awarded more in damages than can be supported by the evidence. *See id.* Whether to conduct a hearing for the purpose of ascertaining damages is discretionary. *See Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).  The court held a hearing on RE/MAX's Motion on April 20, 2015. (*See* Doc. 26).

### 1.   Statutory Damages

With regard to its trademark claims, RE/MAX seeks damages, fees and costs pursuant to the Lanham Act. Under 15 U.S.C. § 1117(a), when a Lanham Act violation has been established,

the plaintiff "*shall be entitled . . .* subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." *Id.* In addition, "[i]n assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three time such amount." *Id.* (emphasis added).

Here, RE/MAX's request for damages is based upon the fees that would have been owed to it had Defendants continued to operate as a legitimate RE/MAX franchise. [4] In advance of the April hearing, RE/MAX provided the court with documentary evidence to support its fee calculation. Following a review of the supporting evidence, the court finds that RE/MAX is owed fees in the amount of $7,735.00.[5] And because RE/MAX's claims involve a counterfeit mark, 15 U.S.C. § 1117(b) specifies the proper calculation of damages as "three times such profits or damages." Therefore, RE/MAX is entitled to treble damages from the Defendants, jointly and severally, in the amount of $23,205.00.

2.  Breach of Contract Damages

RE/MAX has also requested an award of damages against Defendant Grindle, resulting from his breach of the franchise agreement. These damages are based upon dues that were owed by Defendant Grindle under the franchise agreement at the time the contract was terminated. The

---

[4] RE/MAX's fee request is based upon two agents: Defendant Grindle and Mr. Grinnell, whose real estate license was—at the time of the hearing—listed with Defendant Grindle's.

[5] This amount reflects a Continuing Franchise Fee of $120.00 per associate. In its motion and in its fee calculation, RE/MAX asserts that the monthly Continuing Franchise Fee was raised from $120.00 to $123.00. However, the only documentation provided to the court (Plaintiff's Exhibit 1) shows a franchise fee of $120.00. *Id.* at 21. Similarly, the documentary evidence only supports an annual fee of $390. *Id.* at 22. Although RE/MAX states that the fee was raised to $400, the court has been unable to locate any evidence to support this amount. In addition, the court's calculation reflects RE/MAX's representation during the hearing that it would withdraw its request for a Broker Fee in the amount of $213.90. Finally, RE/MAX's original calculation was based on the 13 months between the termination of the franchise agreement and the date of the hearing. Four months have passed since the date of the hearing; thus, the court has calculated the damages based on 17 months. $120 (Franchise Fee) + $32.5 (Annual Fee ($390/12)) + $75 (Advertising Fee) = $227.7 x 2 associates = $455 x 17 months = $7,735.

court has reviewed the evidence provided by RE/MAX and finds that it is entitled to an award of $1,839.22.[6]

       3.   Attorney Fees and Costs

Finally, pursuant to 15 U.S.C. § 1117(b) and the terms of the franchise agreement, RE/MAX is entitled to an award of its reasonable attorney fees and costs.[7] Section 1117(b) provides in pertinent part that "in a case involving [intentional] use of a counterfeit mark . . . the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profit or damages . . . together with a reasonable attorney's fee." And the franchise agreement specifically states:

> If we engage legal counsel in connection with any failure by you or your Owners to comply with this Agreement, you shall reimburse us, upon demand, for the costs and expenses incurred by us as a result of such failure, including, without limitation, reasonable [attorney fees and costs], whether incurred prior to, in preparation

---

[6] RE/MAX presented the court with a Report (Plaintiff's Exhibit 12) to support its assertion that, at the time of termination, Defendant Grindle owed $1,571.98 in past-due fees. RE/MAX also asserted that Defendant Grindle owed $544.68 in Broker's Fees. However, RE/MAX has not directed the court to any documentary evidence to support its request for the past-due Broker's Fees. Therefore, the court has calculated the damages based solely on the dues supported by the Report. And the court has again based its calculation on the 17 months that have passed since the termination of the franchise agreement. $1571.98 (Past-Due Fees) + ($1571.98 (Past-Due Fees) x 1% (Interest Expense for Past-Due Fees) = $15.72 x 17 months = $267.24) = $1839.22.

[7] RE/MAX would also be entitled to its reasonable attorney fees pursuant to 15 U.S.C. § 1117(a), which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Although the statute does not define "exceptional", the Tenth Circuit has determined that "it occurs when a trademark infringement is malicious, fraudulent, deliberate, or willful." *United Phosphorus, Ltd. V. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000). "Acting 'willfully' means acting with knowledge that one's actions constitute . . . infringement." *Merchant Media, LLC v. H.S.M. Int'l*, No. 05 Civ. 2817(JES), 2006 WL 3479022, at *4 (S.D.N.Y. Nov. 30, 2006) (citing *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986)). In this case, Defendants were subject to the terms of a franchise agreement, which specifically required them to take steps to de-identify their real estate business in the event that the franchise agreement was terminated. Despite this, after the agreement was terminated, Defendant's continued to use RE/MAX's Marks and hold themselves out as a part of the RE/MAX real estate network. Further, in spite of repeatedly receiving notice of this action, Defendants have failed to appear and defend this action. Indeed, with full knowledge of this action, Defendants continued to utilize RE/MAX's Marks. Based upon this, the court concludes that Defendants' conduct was willful.

> for, in contemplation of[,] or in connection with the filing of any judicial proceeding to enforce this Agreement.

Plaintiff's Exhibit 1 at p. 45.

To determine a reasonable fee award, the court will generally begin with a lodestar calculation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A lodestar calculation requires multiplying the number of attorney hours expended by a reasonable billing rate. *Id*. at 433. Once the court has determined the lodestar, it may "adjust the lodestar upward or downward to account for particularities" of the work performed. *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997). The party seeking the award of attorney fees must demonstrate that the award it seeks is reasonable. *See Dewey v. Hewlett Packard Co.*, No. 05-cv-01482-REB-MJW, 2007 WL 707462, at *1 (D. Colo. Mar. 5, 2007). In determining the reasonable number of hours spent on the litigation, the applicant must exercise the same "billing judgment" as would be proper in setting fees for a paying client. *Hensley*, 461 U.S. 436. "'Hours that are not properly billed to one's *client* are also not properly billed to one's *adversary* pursuant to statutory authority.'" *Id*. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)) (emphasis in *Copeland*).

Here, RE/MAX seeks attorney fees in the amount of $12,238.80. (Doc. 25 at 4). The amount represents the actual fees of attorneys John C. Heuton, John R. Posthumus, and Donna P. Gonzales calculated at the standard billing rate actually billed to RE/MAX, based on the number of hours worked, and with downward adjustments. *Id*. at ¶¶ 8-16. The billing compilation provided to the court (Doc. 25-2) sufficiently demonstrates that through April of 2015, RE/MAX incurred $12,238.80 in reasonable attorney fees for prosecution of the complaint.

RE/MAX also seeks reimbursement of its costs incurred in this action. Federal Rule of Civil Procedure 54(d)(1) provides that costs should be allowed to a prevailing party. Costs may

be taxed under Rule 54(d) where they are authorized by federal statute. *Xtreme Coil Drilling Corp. v. Ecana Oil & Gas (USA), Inc.*, 958 F.Supp.2d 1238, 1260 (D. Colo. 2013). And Section 1117(a) provides that costs may be recovered for established violations of the Lanham Act. 15 U.S.C. § 1117(a).

In this action, RE/MAX is the prevailing party by virtue of Defendants' default. *See, e.g., J & J Sports Productions, Inc. v. Paz-Padilla*, No. 3:12-cv-0228-GPC-WMC, 2013 WL 6002872, at *1 (S.D.Cal. Nov. 12, 2013) ("a plaintiff who obtains a default judgment may be considered a prevailing party for purposes of awarding fees and costs . . .") (citations omitted); *Local 881 United Food and Commercial Workers Union v. Food Club of Indiana d/b/a Valumart Foods,* No. 2:11–CV–161–TLS, 2011 WL 3501721, at *2–3 (Aug. 10, 2011)(awarding costs under Rule 54(d)(1) on default judgment); *St. Paul Fire & Marine Ins. Co. v. AVH Trucking LLC,* No. 07–4802, 2008 WL 4601771, at *5 (D.N.J. Oct. 15, 2008) (same). By the well-pleaded allegations and evidence, RE/MAX has established its claims of trademark infringement, counterfeiting, and unfair competition, as well as statutory damages, and attorney fees. It has incurred $1,105.16 in compensable litigation costs, which consist of filing fees and service fees. (Doc. 25-2 at p. 4). Therefore, pursuant to 15 U.S.C. § 1117 and Fed. R. Civ. P. 54(d), RE/MAX is also entitled to its costs.

**D.    Injunctive Relief**

"To obtain a permanent injunction, a plaintiff must show: '(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.'" *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014) (quoting *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009)). It is the

15

movant's burden to demonstrate that each of these elements tips in his or her favor. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188-89 (10th Cir. 2003).

First, under the standards applicable to default judgment, the court finds that RE/MAX has succeeded on the merits of its trademark infringement claims. *See Olcott v. Delaware Food Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) (once default is entered, a defendant is deemed to have admitted the plaintiff's well-pleaded allegations of fact). Second, the court concludes that irreparable harm will occur if Defendants are not permanently enjoined from using RE/MAX's Marks or otherwise identifying themselves as being associated with RE/MAX. RE/MAX faces the risk of lost business and customer relationships because Defendants are continuing to operate a real estate business while using RE/MAX's Marks. Indeed, during the default judgment hearing, RE/MAX offered evidence of actual consumer confusion.[8] *Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F.Supp.2d 1216, 1227 (D. Colo. 2001) ("In trademark cases, irreparable injury is ordinarily presumed once the plaintiff has established a likelihood of confusion."); *see also Times Mirror Magaznies, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 169 (3d Cir. 2000) ("[A] lack of control over the use of one's own mark amounts to irreparable harm."). Third, the threatened injury to RE/MAX far outweighs the harm that the injunction would cause Defendants. Because the franchise agreement was properly terminated, Defendants are no longer franchisees and have no legal rights to use RE/MAX's Marks in their business or otherwise identify themselves as being associated with the RE/MAX network. Finally, the issuance of an injunction will not adversely affect the public interest. Rather, any continued unauthorized use of RE/MAX's Marks by Defendants will certainly cause consumer confusion. Therefore, the court recommends that a permanent injunction be issued.

---

[8] Defendants placed a "For Sale" sign — with RE/MAX's Mark on it — outside of a local home. Apparently, a potential real estate purchaser called a RE/MAX agent regarding that home, not knowing that Defendants were not actually affiliated with RE/MAX. (Plaintiff's Exhibit 10 at p.1).

**CONCLUSION**

WHEREFORE, for the foregoing reasons the court RECOMMENDS that:

1. RE/MAX, LLC's Motion for Default Judgment (filed November 6, 2014) (Doc. 20) be GRANTED.

2. Default Judgment be entered on the complaint in favor of RE/MAX and against Defendant Randy W. Grindle in the amount of $1,839.22.

3. Default judgment be entered on the complaint in favor of RE/MAX and against Defendants Quality Living, LLC and Randy W. Grindle, jointly and severally, in the amount of $36,548.96 (consisting of $23,205.00 in damages, $12,238.80 in attorney fees, and $1,105.16 in costs).

4. A permanent injunction enter enjoining Defendants as follows:

> Defendants — including any principals, agents, servants, employees, successors, and assigns of Defendants — are hereby enjoined from (1) further breaching the Franchise Agreement, including, without limitation, using the RE/MAX Marks; (2) imitating, copying, duplicating, counterfeiting, or otherwise making any use of the RE/MAX Marks or any mark confusingly similar to, or dilutive of, the distinctiveness of the RE/MAX Marks; (3) manufacturing, producing, distributing, circulating, selling, or otherwise disposing of any printed materials which bears any copy or colorable imitation of the RE/MAX Marks; (4) using any unauthorized copy or colorable imitation of the RE/MAX Marks in a way that is likely to relate or connect Defendants with RE/MAX, including but not limited to yard signs or building signage; (5) using any false designation of origin or false description which can or is likely to lead the trade or public, to mistakenly believe that any services or goods sold or offered by Defendants are sponsored, endorsed, connected, or authorized by RE/MAX; (6) engaging in any other activity constituting counterfeiting, unfair competition, or infringement of the RE/MAX Marks or RE/MAX's rights in, or to use, or to exploit the same; and (7) assisting, aiding, or abetting another person or business entity in performing any of the aforementioned acts. Further, Defendants will physically remove, and not paint over, all signage

displaying the RE/MAX Marks from the property located at 16448
Highway 52, Wiggins, Colorado 80654.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for *de novo*

review by the district court or for appellate review." *United States v. Once Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to

make timely objections may bar de novo review by the district court of the magistrate judge's

proposed findings and recommendations and will result in waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation de novo despite the lack of an objection

does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve the issue for de novo review by the district court or appellate

review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate' judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 20th day of August, 2015.

BY THE COURT:


s/Craig B. Shaffer
United States Magistrate Judge